This cause was initially heard by the Deputy Commissioner in Morganton, North Carolina on November 17, 1994.
* * * * * * * * * * *
The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. Upon reconsideration of the evidence as a whole, the undersigned find that some modification is in order. Defendants have made several motions, including one for the introduction of additional evidence into the record, all of which will be addressed in due course.
* * * * * * * * * *
EVIDENTIARY RULINGS
1. Defense counsel seeks to introduce plaintiff's Form 18 officially into the record as well as the tape of a recorded statement from plaintiff to be compared to the transcript for impeachment purposes. While these types of evidence may, indeed, be used for impeachment purposes in the proper context, it appears that defendants neither timely nor properly officially submitted these proposed exhibits for the record before the Deputy Commissioner. Further, these documents can in no way be possibly construed as "newly discovered" at this time. Thus, in the discretion of the undersigned, request for introduction of the Form 18 and the recorded statement into the record IS HEREBY DENIED.
2. Defendants also object to the introduction of plaintiff's personal diary calendar (Plaintiff's Exhibit 1, marked P1,) into evidence as inadmissible hearsay. In the discretion of the undersigned, defendants' objection is HEREBY OVERRULED, and the exhibit may be used for corroborative purposes under the circumstances of this workers' compensation matter.
* * * * * * * * * *
The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
* * * * * * * * * *
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. On March 29, 1993, the parties were bound by and subject to the North Carolina Workers' Compensation Act.
2. On said date(s) the employer-employee relationship existed between the parties.
3. As of said date(s) CNA provided the coverage to the employer as provided under said Act.
4. The alleged injury giving rise to the plaintiff's claim occurred on March 29, 1993.
5. On said date the plaintiff was earning an average weekly wage of $273.01.
6. That the issues to be determined in this case are:
 a. Did the plaintiff sustain an injury by accident or occupational disease arising out of and in the course of her employment with the defendant-employer on March 29, 1993; and,
 b. If so, are the injuries of which the plaintiff complains caused by the said accident; and,
 c. If so, to what compensation, if any, is the plaintiff entitled under the Act.
7. The plaintiff began working for the defendant-employer on February 24, 1993. She last worked for said defendant-employer on May 6, 1993, and she was presently not working as of the date of initial hearing.
8. The parties further stipulate into evidence approximately 50 pages of medical records together with a Pre-trial Agreement of stipulated facts and material.
At the initial hearing on November 17, 1994, the parties introduced the following exhibits:
1. Plaintiff's Exhibit 1, marked P1, consisting of the plaintiff's personal diary calendar to which the defendant objects again on appeal, objection of which has been overruled.
2. Defendant's Exhibit 5, marked D5, consisting of a Form 19 to which the plaintiff objected (but which has not been appealed by plaintiff).
At the initial hearing on November 17, 1994, the defendant pled the defense under Section 97-22 of the Act, and the plaintiff moved for attorney fees under Section 97-88.1 of the Act and for optional relief under Section 97-30 of said Act, which matters will be ruled on when this matter is finally determined.
The defendant also moved to be allowed to depose a lay witness, Debbie Summerville, for the purpose of identifying a telephone interview with the plaintiff, which Motion was allowed.
Subsequent to the initial hearing on November 17, 1994, the parties entered the following documentation into the record with respect to which all motions and objections have been ruled upon by the undersigned in accordance with applicable law and rules of evidence:
1. Deposition of David M. Jones, M.D. dated November 29, 1994.
2. Deposition of Mark R. McGinnis, M.D. dated January 11, 1995.
3. Deposition of Richard O. McBurney, M.D. dated January 11, 1995.
4. Deposition of Charles Kiell, M.D. dated January 23, 1995.
5. Defendants further moved for sanctions and assessment of costs, pursuant to G.S. 97-88.1, against plaintiff's counsel with respect to certain of the above-depositions, in particular that of Dr. McBurney. Due to the limited line of questioning in dispute and the required nature of the depositions, defendants' motion is HEREBY DENIED.
6. Plaintiff moved to allow presentation of rating evidence by medical records, to which the defendants agreed. However, no such evidence was presented into the initial record.
* * * * * * * * * * *
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. On March 29, 1993, the plaintiff, who was 35 years of age with a high school equivalency education and some college training in forestry, and had spent most of her working years in convenience stores and furniture factories in North Carolina, was employed by the defendant-employer as a pump sander.
2. In performing the duties of her employment as a pump sander, the plaintiff held in her hand a sander with which she sanded table and chair legs.
3. On March 29, 1993 while she was performing her sanding duties on a Queen Anne style furniture leg, her right hand was snatched into the sander which felt like a sandpaper burn but did not give her much trouble at the time. However, she did report the incident to her boss, Callaway.
4. Several days later, on or about April 5, 1993, her right hand began to swell, and she reported the incident to the supervisor of the sanding department, Mr. Triplett. He referred her to the plant nurse with the complaints concerning her right hand. She was advised by the nurse that she had a trigger finger and was returned to work.
5. The plaintiff continued to work and continued to have problems with her right hand which continued to swell and become numb and painful and turn blue on occasions. As a result of these problems the plaintiff again went to the plant nurse with her complaints on or about April 16 or 17, 1993, and she was set up for a medical appointment on April 21, 1993.
6. Thereafter, the plaintiff was provided medical treatment and care for her right hand and arm. She was medically taken out of work on May 6, 1993 and underwent a carpal tunnel release of her right wrist on August 2, 1993. Subsequently, she underwent a cubital tunnel release of her right elbow on April 29, 1994 and a first rib resection incident to a thoracic outlet syndrome on October 13, 1994.
7. Plaintiff's history as to her injury is accepted as credible and convincing. The plaintiff has been medically diagnosed as having sustained a traumatic right upper extremity carpal tunnel syndrome and cubital tunnel syndrome as a result of the incident occurring on March 29, 1993 which the undersigned find as a fact; see Deposition of Dr. Mark R. McGinnis at page 17:
 "Q. Okay. Well, maybe I should be a little more particular in my question. Assuming all those things I just said, do you have an opinion, satisfactory to yourself to a reasonable degree of medical certainty, whether the cause of problems that Ms. Colvin has experienced are attributable to this work injury of March 1993, where she had the vigorous snapping movement of her wrist?
MS. STEINBACHER: Objection.
 THE WITNESS: The injury that occurred on March 29th, 1993 apparently triggered a lot of her symptoms. This is based on the history as the patient gave it to me. It is not extremely unusual for people to have a sudden hyperextension injury that significantly stretches the nerves and causes some subsequent swelling, and creates a nerve entrapment syndrome, such as carpal tunnel syndrome and possibly cubital tunnel syndrome, that it's not unheard of for this to trigger a so-called "double-crush phenomenon" where you get two different levels of compression of the same nerve.
 ". . . . To answer your question briefly, according to the patient's history, I feel that the injury of March 29th, 1993, may have contributed to her problems."
Also see deposition of Dr. Charles Kiell, M.D. at page 20:
 "A. No, I don't. I believe that most cases of thoracic outlet are due to anatomical problems or direct trauma to the brachial plexus either by neck injuries or direct trauma to the plexus as it — at the neck. So no, I don't — the injury as described in her records would not be an injury I would think would cause direct trauma at the level of thoracic outlet."
8. Based upon the opinions of these two doctors, on March 29, 1993, the plaintiff sustained a traumatic injury by accident arising out of and in the course of the employment with the defendant-employer resulting in the compression of the ulnar nerve of her right upper extremity in two places, the wrist and the elbow. Any injury plaintiff suffered to her thoracic outlet was not related to the compensable injury.
9. Plaintiff reached maximum medical improvement of her wrist and elbow on or about September 30, 1994, when Dr. McGinnis last reduced her restrictions, having previously released her to perform light duty. Any subsequent periods of total disability are due to her thoracic outlet syndrome, which the expert medical testimony found not to be related to plaintiff's compensable on-the-job injury. Based upon the greater weight of the evidence of record, particularly the testimony of Dr. McGinnis concerning his release of plaintiff to return to light duty work from these injuries on August 12, 1994, plaintiff's improvement between August and September 30, 1994, the uncertainty of any permanent impairment due to the compensable conditions at this time, and the probable vocational prospects, plaintiff had regained the capacity to earn wages as of that date, but for the non work related shoulder condition. Plaintiff has failed to prove what, if any, permanent partial or temporary partial disability she has sustained as a result of the compensable injury.
10. The plaintiff has lost time from work as a result of the injury from May 6, 1993, to September 30, 1994, the date plaintiff was released to return to light duty work from her compensable injuries.
11. The plaintiff was earning an average weekly wage of $273.01 on March 29, 1993.
* * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission find as follows:
CONCLUSIONS OF LAW
1. On March 29, 1993, the plaintiff sustained a traumatic injury by accident arising out of and in the course of the employment with the defendant-employer resulting in the compression of the ulnar nerve of her right upper extremity in two places, the wrist and the elbow.
2. The plaintiff is entitled to temporary total disability compensation benefits from May 6, 1993 until September 30, 1994, the date plaintiff was released to return to light duty work from her compensable conditions.
3. The defendants are entitled to a credit for compensation paid to the plaintiff subsequent to March 29, 1993 or disability benefits provided exclusively by the said defendants against the compensation herein awarded.
4. Plaintiff has failed to meet her burden of showing what, if any, permanent partial or temporary partial disability she may have sustained. G.S. 97-30 or G.S. 97-31.
* * * * * * * * * * *
The foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. The defendants shall pay to the plaintiff continuing temporary total disability compensation benefits from May 6, 1993 until September 30, 1994 at the rate of $182.01 per week, less the attorney fee and credit hereinafter provided.
2. The defendants shall pay all medical expense resulting from said injury, when the same have been presented for payment in accordance with the provisions of the North Carolina Workers' Compensation Act.
3. The defendants are allowed a credit for compensation paid or disability benefits provided exclusively by the said defendants to the plaintiff subsequent to March 29, 1993 against the compensation herein awarded.
4. An attorney fee of 25 percent of the compensation herein allowed subsequent to deducting the credit herein allowed is hereby approved and awarded to Gregory J. Brewer for his services to the plaintiff to be deducted from the compensation above-provided and paid directly to said attorney.
5. The defendants shall pay the costs.
This the __________ day of ________________________, 1996.
 S/ _________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ _________________ J. RANDOLPH WARD COMMISSIONER
S/ ________________ LAURA K. MAVRETIC COMMISSIONER
JHB/nwm 07/23/96